## In re DR. RIEGEL SANITARIUM CO.

(District Court, E. D. Pennsylvania. July 10, 1913.)

### No. 4,626.

BANKRUPTCY (§ 140*)—OWNERSHIP—FURNITURE OF SANITARIUM—FIXTURES—SEPARATE OWNERSHIP OF REALTY AND CHATTELS.

A bankrupt corporation was engaged in conducting a sanitarium. Title to the building and the furniture therein had previously been vested in the same person, who conveyed the personal property to the bankrupt and the real estate later to another corporation, organized at the time for the purpose of holding the same, and such corporation executed a mortgage thereon. Neither the deed nor the mortgage contained any reference to the personal property, nor to the purpose for which the realty was used. *Held*, that neither conveyed the furniture as fixtures, the title thereto having been previously vested in the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

In the matter of the Dr. Riegel Sanitarium Company, bankrupt. On exceptions to report of referee. Exceptions overruled.

Joseph A. McKeon, of Philadelphia, Pa., for trustee.

J. Edgar Butler, of Philadelphia, Pa., and Isabel Darlington, of West Chester, Pa., for Realty Co. and mortgagee.

J. B. McPHERSON, Circuit Judge. The subject in dispute may be explained in a few words:

The bankrupt was engaged in carrying on a sanitarium. In December, 1912, a creditors' petition was filed and a receiver was appointed. In a few days he presented a petition, averring that he had found a quantity of furniture and furnishings on the premises 1927 Girard avenue, Philadelphia, and asking for an order to sell. He obtained the order, appraised the goods, and was about to sell, when another corporation, named the Dr. Riegel Sanitarium *Realty* Company (hereinafter called the Realty Company), applied to the court, asserting "absolute ownership" of certain personal property described in Exhibits A and B attached to its petition, and averring (1) that this property was among the articles about to be sold by the receiver; (2) that the Realty Company was also the owner in fee simple of the premises where these articles were; and (3) that the articles described in Exhibit B were so attached to the realty that removal would irreparably injure the owner of the fee. The District Court was therefore asked to restrain the sale, and to direct the receiver to deliver to the Realty Company all the articles described in both exhibits. Such an order was made on January 10, and of course the sale did not take place. On January 13 the receiver petitioned the court to vacate the order of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

January 10 and to direct him to proceed with the sale. Thereupon the whole subject was sent to the referee with instructions "to ascertain and report the facts, together with the testimony, his findings, and recommendations thereon." After hearing a good deal of evidence the referee was ready to report on March 10, with a recommendation that the order be vacated, except as to "such items that are so affixed to the premises that they cannot be removed without injury to the structure of the building." Exceptions to the report were presented, however, and these having been overruled, the subject now comes up for review.

The articles described in Exhibit A are no longer in dispute, so that the controversy is confined to Exhibit B. Another claimant also has intervened—P. M. Sharpless, who is a mortgagee of the real estate— and accordingly it becomes necessary at this point in the discussion to explain the relation of the Realty Company and of the mortgagee to the bankrupt. Early in 1911 the buildings on Girard avenue were owned, occupied, furnished, and equipped by the Pennsylvania Benevolent Association—a society or corporation not connected with any of the parties to this dispute—but the business (a hospital or sanitarium) had not been successful, and indeed, as I understand, was about to be given up. A mortgage of $35,000 incumbered the property, and proceedings to collect the debt were threatened. About the same time several persons, who desired to promote certain medical remedies and methods of treatment, obtained an option of $35,000 upon the real estate with its contents, and in April the bankrupt corporation was organized under the laws of Delaware. But when settlement was about to be made in August, four months later, the title could not be insured because the trust company refused to issue a policy, taking the ground that a foreign corporation could not legally own real estate in Pennsylvania. The promoters thereupon decided to organize a holding company under the laws of Pennsylvania for the purpose of taking the title to the real estate on Girard avenue, and accordingly the Realty Company was chartered on September 20. Meanwhile, and before this was done, the buildings and also the furniture and furnishings had been sold to the mortgage creditor of the Benevolent Association under executions issued not only upon the mortgage, but also upon the bond accompanying that security. The real estate was sold under the mortgage, and the personal property was sold upon the execution issued on the bond. Both the real and the personal property were bought in by the attorney for the mortgage debt, and in due course his title was transferred as follows: On August 17 he executed a bill of sale directly to the bankrupt for all the personal property then upon the premises, and (at a later date after the Realty Company had been organized) his formal title to the real estate was conveyed to that company, not directly, but after some intermediate steps that are not important and need not be detailed. The money necessary to carry out this transaction—$35,000—was furnished by Mr. Sharpless, and in order to secure him the Realty Company mortgaged the premises for the amount thus advanced. Neither the deed to the Realty Company, nor the mortgage to Sharpless, refers in any way to personal property, or to the contents of the building, or to any business that had been,

or might be, carried on therein; but both instruments are confined to the conveyance of the real estate. Both use the conventional language of Pennsylvania deeds, and (as already stated) neither makes any reference to a sanitarium or to furniture or furnishings or fixtures.

It will be noticed, therefore, that the title to the real estate, and the title to the chattels contained therein, had been separated. if, indeed, they had ever been united by the Benevolent Association—and of such union there is no evidence. The furniture and furnishings had been conveyed to the bankrupt and not to the Realty Company, and the title to the real estate had been conveyed to the Realty Company and not to the bankrupt. Although neither the deed nor the mortgage nor any other writing professes to unite these two titles, the Realty Company is claiming to be the owner of the personal property, and Sharpless asserts that the lien of his mortgage covers it. I must admit that I do not clearly understand on what ground these claims are rested; I mean, on what clearly defined legal ground, for I am aware of a somewhat indefinite proposition—rather assumed in the argument than expressly formulated—that the bankrupt and the Realty Company were practically identical, and that what belonged to one should therefore be regarded as belonging in substance to the other. The contention is not without some support; for the two corporations were officered and controlled by the same persons, both were promoting the same enterprise, and they did not attempt to treat themselves as distinct. Nevertheless they could not help being distinct, and continuing to be distinct, in several particulars. They had been chartered for different purposes, the stockholders were not identical, and the corporate powers were not the same. The very object of creating the Realty Company was to form a separate corporation to hold the real estate in Philadelphia, and it is unavailing to insist now that the details of the transaction were so interrelated that the rights of one of these corporations were substantially the rights of the other. If I am correct in this position, the discussion would seem to be at an end, for it is certain that the Realty Company never acquired any right to this personal property by a bill of sale or by other transfer from any owner of the title; and it is equally certain that Sharpless has acquired no greater right than was possessed by the Realty Company itself. The mortgagee's counsel argue that their client's security is broad enough to cover this personal property as well as the real estate, and they appeal to the modern rules that govern the law of fixtures. The argument is that the personal property in question is necessary for the purposes of a sanitarium, and therefore should be treated as attached to the realty; that, as loose rolls and other machinery lying on the floor of a mill may pass as fixtures, so furniture and furnishings specially appropriate for use in a sanitarium may pass as fixtures, even if they be not attached to the soil or to the building. I do not think it worth while to spend time in discussing this proposed expansion of the law of fixtures. I think there are sufficient reasons why it could not in any event prevail in the present case:

1. This personal property belonged to the bankrupt before the Realty Company came into existence at all, and the company never acquired

the title thereto, and could not sell or mortgage it while it belonged to another person.

2. As the bankrupt did not attempt to convey or mortgage this property, either by description as personal property or by referring to it as fixtures, the title to it did not automatically leave the bankrupt.

3. Neither the deed nor the mortgage attempts to convey or incumber this real estate as a "sanitarium." I may assume (but without deciding) that a building devoted to such purposes, and so described, might conceivably need a certain kind of equipment, as a rolling mill ex vi termini needs machinery to be complete. But there is no such description here; both instruments merely convey houses and land, and contain no reference to any actual or intended use of the property; and there is no evidence that any agreement of any kind, written or parol, was made, merging the personal property in the real estate (so to speak) as machinery might by agreement be merged in a mill. Such a union can only be inferred or implied from the loose and confused conduct of the parties, and I do not think the court would be justified in drawing the inference.

But the Realty Company and the mortgagee *do* have a possible interest that should be protected. The referee recognized it when he recommended that the order of January 10 should be vacated, except as to "such items that are so affixed to the premises that they cannot be removed without injury to the structure of the building." But he stopped there without going on to the next and obvious step—he did not specify what these excepted articles are. It is clear that without a detailed finding on this subject no definite order can be made, and the report must therefore be sent back with instructions to report on or before August 1 what specific articles can, and what articles cannot, be removed without injury to the structure of the building. It is probable that the contestants may now be able to agree about most of the items in Exhibit B, and in that event the entry of the final order may of course be hastened.

The report is therefore sent back to the referee for the purpose just indicated.